IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| REDHAWK HOLDINGS, INC.<br>    A Nevada Company,<br><br>         Plaintiff,<br><br>vs.<br><br>QUANTERNARY RESOURCE INVESTIGATION, LLC,<br>    A Louisiana Limited Liability Company,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Redhawk Holdings, Inc. ("RedHawk") by and through its undersigned counsel, pleads the following against Quanternary Resource Investigation, LLC ("QRI") and alleges as follows:

### JURISDICTION AND VENUE

(1)   That Plaintiff is a corporation incorporated in the State of Nevada, thus, deemed a citizen of the State of Nevada.

(2)   That Defendant is a Louisiana Limited Liability Company, and upon information and belief, none of the members are citizens of the State of Missouri.

(3)   Jurisdiction of the federal courts is appropriate as the dispute involves citizens of different states. *28 U.S.C. § 1332*.

(3)   Venue is proper in this Court as Defendant conducts business in the County of New Madrid, State of Missouri. *Local Rule 2.07(A)(3)*.

## DETRIMENTAL RELIANCE

(4) In the fourth quarter of 2022, RedHawk engaged negotiations with Cody Development, LLC ("Cody") regarding RedHawk entering into a Limited Liability Interest Purchase Agreement of Cody.

(5) At the time of the negotiations, Cody was facing a substantial income tax liability, RedHawk had a significant tax loss carry-forward that exceeded Cody's tax liability. Hence, the tax loss carry-forward would cover Cody's income tax liability.

(6) Commencing in October 2022, G. Darcy Klug, Chief Executive Officer of RedHawk Holdings Corp. ("RedHawk") engaged in multiple meetings/telephone conversations with the following officers of QRI.

    (a) Fonda New, Chief Executive Officer

    (b) Kenny New, President

    (c) Nina Goodrich, Chief Operating Officer

    (d) Mary Williamson, Chief Financial Officer

In order to conduct certain due diligence RedHawk considered necessary prior to its acquisition of Cody.

(7) QRI was aware that time was of the essence in RedHawk's acquisition of Cody.

(8) QRI supported RedHawk's acquisition of Cody in the anticipation that QRI may be privy to additional business opportunities from RedHawk's connections in the oil industry and RedHawk would bring stability to Cody.

(9) After conducting certain limited due diligence, RedHawk relying heavily upon the representations of QRI as being an experienced state and federal government

contractor, RedHawk agreed to enter into the Limited Liability Interest Purchase Agreement of Cody wherein RedHawk acquired 100% ownership interest in Cody ("Acquisition").

(10) During RedHawk's due diligence through QRI, RedHawk learned the following information:

    (a) That QRI was Cody's sole customer.

    (b) That on or about October 7, 2021, QRI had entered into Contract No. 2000609620 ("GOHSEP Contract") with the State of Louisiana Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP") relating to the delivery, set up, and removal of FEMA trailers at the homes of Louisiana residents impacted by Hurricane Ida.

    (c) That on or about October 19, 2021, QRI entered into a subcontract with Cody ("Subcontract") to perform the services under the GOHSEP Contract.

    (d) That QRI and Cody commenced their relationship for the mutual benefit of both parties wherein QRI needed labor support and Cody, through its president, Steven Rick, possessed knowledge of FEMA and government projects.

    (e) That at the time QRI entered into the GOHSEP Contract, QRI represented that it had a line of credit ("Line of Credit") with a local bank.

    (f) That Cody was to perform the field services, and QRI would perform the administrative tasks including interfacing with GOHSEP. That Cody and QRI's agreement was that Cody would bill QRI at cost, QRI would mark-up the invoices,

and submit the marked-up invoices to the State of Louisiana. Upon payment of the invoices, QRI would reimburse Cody for Cody's cost and Cody's portion of the mark-up.

(11)     After completing the Acquisition, RedHawk assumed Cody's administration relationship between QRI. After completion of the Acquisition, RedHawk learned after, but not previously disclosed to RedHawk or Cody, that QRI's bank had previously reduced QRI's availability under its Line of Credit by $2 million at the beginning of the GOHSEP Contract.

(12)     Accordingly, QRI's accounting records show that QRI initially paid the Cody invoices (that QRI prepared) in full. However, by February/March 2022, QRI began issuing only partial payments to Cody and falling behind on amounts owed on the Cody invoices. QRI intentionally and fraudulently represented to Cody that they could not pay or timely pay Cody on invoices due and owing because they had not received payment for from GOHSEP, that all GOHSEP Contract invoices were billed, and QRI had double billed GOHSEP resulting deductive changes to the invoices without providing any detail regarding same. RedHawk discovered these representations are not supported and/or directly contradicted by QRI's own accounting records.

(13)     Moreover, RedHawk discovered QRI's own records revealed that after the first 30-60 days of the project, QRI was never underwater on the GOHSEP contract, upon information and belief RedHawk assumes the profits were re-directed QRI to pay down its Line of Credit as required by the bank.

(14) RedHawk's post-Acquisition investigation, including review of QRI's Purchase Order(s) with GOHSEP, master "operations logs," final profit and loss statement, project revenue statement, and project cash statement, revealed that QRI negligently, intentionally, and/or fraudulently:

    (a) Failed to pay and/or timely pay Cody for invoices billed under the GOHSEP Contract despite QRI's receipt of funds for payment of same from GOHSEP;

    (b) Failed to invoice for numerous services rendered by Cody to QRI under the GOHSEP Contract;

    (c) Failed to pay Cody for the unbilled invoices;

    (d) Inaccurately and improperly calculated Cody's share of profits under the GOHSEP Contract; and

    (e) Failed to pay Cody the complete amount owed for its share of profits under the GOHSEP Contract.

(15) With respect to unpaid profit, RedHawk's post-Acquisition investigation determined QRI negligently, intentionally, and/or fraudulently failed to calculate profit using common accounting practices and principles. For example, QRI's own record demonstrate that QRI:

    (a) Charged excessive overhead percentages amounting to 102% of the labor total;

    (b) Deducted certain labor costs twice prior splitting the profits (e.g., once as direct labor costs and a second time as payroll costs);

    (c) Overcharged the overhead burden on certain salaries

amounting to 55% of the base salary;

(d) Charged $622,000 of "indirect costs" to the final profit sharing to prepare 22 invoices over an 18-month period; and

(e) Included unnecessary interest charges on QRI's Line of Credit not necessary for Cody and/or the GOHSEP Contract.

(16) RedHawk justifiably and reasonably relied upon QRI's' representations and QRI knew that RedHawk was relying upon QRI's representation in the Acquistion.

(17) RedHawk was damaged as a result of its reliance upon QRI' promises and representations, which were false and/or remain unfulfilled.

WHEREFORE, RedHawk prays for a judgment in its favor and against QRI for an amount that adequately compensates its damages in an amount in excess of $577,00 as a result of the QRI actions and for any other relief this Court deems necessary and proper.

DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on issues triable by a jury.

SWIECICKI & MUSKETT, LLC

By:   /s/ Christopher S. Swiecicki
Christopher S. Swiecicki #38402
16100 Chesterfield Parkway W, Ste. 368
Chesterfield, MO 63017
636.778.0209 Office
314.341.5796 Cell
636.238.4358 Fax
Chris@SwiecickiLaw.com
Attorney for Plaintiff

6